UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| KATHERINE FAMA, an individual on behalf of herself, the public, and all persons similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>OPPORTUNITY FINANCIAL, LLC, a limited liability company,<br><br>Defendant. | No.<br><br>**COMPLAINT FOR CLASS ACTION**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Katherine Fama, an individual on behalf of herself, the public, and all persons similarly situated, alleges as follows against Defendant Opportunity Financial, LLC, a limited liability company:

**I.     Introduction**

1.      160% APR. That's the interest rate on Defendant Opportunity Financial's loans to millions of borrowers in Washington and in over 30 other states.

2.      The interest rate is high everywhere. And in Washington, it's also illegal. Here the max rate caps out at no more than 25%.

3.      Yet Opportunity Financial continues loaning money at 160% APR, both in states where it's legal and in states where it's not.

COMPLAINT FOR CLASS ACTION
(Case No. [_____]) – Page 1

LAW OFFICES OF
MᴄNAUL EBEL NAWROT & HELGREN ᴘʟʟᴄ
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

4.      Opportunity Financial's conduct in both sets of states is identical. It markets the same loan product, at the same 160% interest rate, under the same trademarked "OppLoans" name. It underwrites the loans. It originates the loans. It services the loans. It enforces the loans. It even claims the loans on its financial reports.

5.      The one difference? In states where 160% APR is legal, Opportunity Financial names itself as the lender in the loan contracts.

6.      But in states where it is illegal, Opportunity Financial names two entities in those contracts: Opportunity Financial as the loan servicer and Utah state-chartered First Electronic Bank or FinWise (or another Utah bank) as the purported lender. Then, after the loans are signed, Opportunity Financial buys 95% of the loan from the bank and goes about business as usual.

7.      This is a sham. Opportunity Financial is the true lender on these loans. It bears all risk of loss, and it holds the predominant economic interest—not First Electronic or FinWise.

8.      Opportunity Financial cannot use this rent-a-bank scheme to immunize itself from Washington law. Courts have repeatedly held that rent-a-bank schemes and similar rent-a-tribe schemes are illegal and cannot circumvent state law. *See, e.g., Consumer Fin. Prot. Bureau v. CashCall, Inc.*, No. 15-cv-7522, 2016 WL 4820635, at *6 (C.D. Cal. Aug. 31, 2016); *D.C. v. Elevate Credit, Inc.*, No. 20-cv-1809, 2021 WL 2982143, at *6–9 (D.D.C. July 15, 2021). These schemes have even landed folks in federal prison on racketeering charges. *See, e.g.*, U.S. Department of Justice, Scott Tucker Sentenced To More Than 16 Years In Prison For Running $3.5 Billion Unlawful Internet Payday Lending Enterprise, https://www.justice.gov/usao-sdny/pr/scott-tucker-sentenced-more-16-years-prison-running-35-billion-unlawful-internet-payday (Jan. 5, 2018).

9.      For these reasons, Washington law applies to these loans and invalidates them.

COMPLAINT FOR CLASS ACTION
(Case No. [_____]) – Page 2

LAW OFFICES OF
MᴄNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

10.     This conclusion is not controversial. Opportunity Financial has virtually conceded as much in a case over its loans in DC. There, the DC Attorney General sued Opportunity Financial over the same rent-a-bank scheme. That lawsuit ended with Opportunity Financial agreeing to:

- pay $1.75 million;

- forgive $640,000 in past due interest; and

- not offer, provide, advertise, or service any loans over the maximum DC interest rate of 24% APR.

11.     Opportunity Financial's own SEC filings concede that it may be the true lender on these loans and that the loans may therefore be invalid. As it tells the SEC and prospective investors:

> If loans facilitated through our platform for one or more bank partners were subject to successful challenge that the bank partner was not the 'true lender,' such loans may be unenforceable or otherwise impaired, we or other program participants may be subject to, among other things, fines, judgments and penalties ….

12.     This action seeks to hold Opportunity Financial accountable for its racketeering and illegal loans in Washington. It seeks damages and restitution. It also seeks a judicial determination that Opportunity Financial is the true lender on the loans, that Washington law applies to these loans, and that the loan contracts and arbitration clauses are void and unenforceable.

## II.     Parties

13.     Plaintiff Katherine Fama is a natural person domiciled in the State of Washington. This is true as of both today's date and the dates when Ms. Fama entered her loan contracts with Opportunity Financial.

14.     Defendant Opportunity Financial, LLC is a limited liability company. Its principal place of business is in Chicago, Illinois.

COMPLAINT FOR CLASS ACTION
(Case No. [_____]) – Page 3

15.     Opportunity Financial's members are: DAV 513 Revocable Trust, JSK Management Holdings, LLC, LTHS Capital Group LP, MCS 2017 Trust FBO Tracy Ward, MCS 2017 Trust FBO Todd Schwartz, Ward Capital Group LP, OppFi Management Holdings, LLC, ACM OppLoans Warrants VII LLC, Bruce Hammersley, Ray Chay, Jessica LaForte, Inoh Choe, Jeremiah Kaye, and CJ Newton.

16.     Opportunity Financial's natural person members are all domiciled in Illinois.

17.     Opportunity Financial's trust members comprise persons who are all domiciled in Illinois.

18.     Opportunity Financial's limited liability company members comprise natural-person members who are all domiciled in either Illinois or Texas.

19.     Opportunity Financial's limited partnership member comprises natural-person partners who are all domiciled in Illinois.

20.     No Opportunity Financial owner or member is a citizen of the State of Washington.

21.     No Opportunity Financial owner or member has its principal place of business in the State of Washington.

### III.    Jurisdiction and Venue

22.     This Court has subject matter jurisdiction over this action for three reasons. First, it has federal question jurisdiction over the RICO claims and supplemental jurisdiction over the state law claims.

23.     Second, the amount in controversy—the aggregate amount sought by the Class—exceeds $5 million, and at least one Plaintiff is diverse from at least one Defendant. Therefore, the Court has subject matter jurisdiction under the Class Action Fairness Act.

COMPLAINT FOR CLASS ACTION
(Case No. [_____]) – Page 4

LAW OFFICES OF
MᴄNᴀᴜʟ Eʙᴇʟ Nᴀᴡʀᴏᴛ & Hᴇʟɢʀᴇɴ ᴘʟʟᴄ
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

24.     Third, it has diversity jurisdiction over the individual claims because there is complete diversity and the amount in controversy is over $75,000. Plaintiff is domiciled in and is a citizen of the State of Washington. Opportunity Financial is not a citizen of Washington; it is a citizen of Illinois and Texas. As for the Class, it comprises persons who were Washington residents at the time of receiving the loan.

25.     This Court has specific personal jurisdiction over Opportunity Financial because it has intentionally availed itself of and purposefully directed its activities towards the State of Washington by doing business here.

26.     Opportunity Financial solicited and entered loans with Plaintiff and the Class, all of whom were Washington residents and citizens at the time of entering the loans. Opportunity Financial knew this. Plaintiff and the Class' loan applications listed Washington addresses for their residences.

27.     Opportunity Financial spearheaded the rent-a-bank scheme and implemented that scheme in Washington. It knew the scheme would affect Washingtonians.

28.     Personal jurisdiction also exists pursuant to RCW 19.86.160.

29.     Venue is proper in the Tacoma Division of the Western District of Washington because a substantial part of the events giving rise to the claim occurred here. When Opportunity Financial entered the loan with Ms. Fama, she lived in or near Olympia, Washington.

## IV.    Facts Common to All Causes of Action

### A.    Washington law caps the interest rate at no more than 25%.

30.     Washington usury law caps the interest rate on consumer loans at no more than the higher of (a) 12 percent per year or (b) four percentage points above the "the average bill rate for twenty-six week treasury bills …." RCW 19.52.020(1). During the

COMPLAINT FOR CLASS ACTION
(Case No. [_____]) – Page 5

Class period, the average bill rate for twenty-six week treasury bills never exceeded 10%. So the maximum interest rate was never more than 14%.

31.     When a lender violates this usury statute, the lender is no longer entitled to receive payments of interest. And the lender must refund twice the amount of all interest payments. RCW 19.52.030.

32.     That said, the Washington Consumer Loan Act permits a higher interest rate—25%—by licensed lenders. RCW 31.04.105(1); *see also* RCW 31.04.035(1). But Opportunity Financial does not have such a license.

33.     When a lender violates the Washington Consumer Loan Act (such as by issuing a loan without a license), the lender is no longer entitled to receive payments of interest or fees. And the lender must refund to the borrower all her payments of interest and fees. RCW 31.04.035(2).

### B.     Opportunity Financial devised a rent-a-bank scheme in an unsuccessful attempt to evade Washington law.

34.     In 2012, Opportunity Financial started its business as a storefront lender. The next year, it moved its business online and focused on nonprime consumers.

35.     Opportunity Financial now issues loans in around 35 states.

36.     In four states, Opportunity Financial closes subprime loans (its OppLoans product) in its own name and does not engage in a rent-a-bank scheme. Those states do not have usury laws prohibiting those loans, so Opportunity Financial's conduct in those states is lawful.

37.     Opportunity Financial's loans to Washingtonians are always offered at around 160% APR. The total principal ranges from $500 to $4,000. Typically the repayment term is around 11 months, but it can range from 9 to 18 months.

38.     Opportunity Financial's loans to Washingtonians are personal loans. They are not for business purposes.

LAW OFFICES OF
MCNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

39.    Opportunity Financial has also expanded into the near-prime market and may have at least some lawful operations in that segment.

**1.    Opportunity Financial is the true lender because it holds the predominant economic interest and bears the risk of loss.**

40.    To create a veneer of legitimacy, Opportunity Financial has implemented a rent-a-bank scheme. It crafts the loan contract as purportedly between one of three Utah state-chartered banks (generally FinWise Bank, but sometimes other banks such as First Electronic) and the Washington consumer. These banks are wholly located in the State of Utah and have no branches outside that state.

41.    But what Opportunity Financial puts on paper does not change the reality: it is the true lender on these loans. Opportunity Financial holds the predominant economic interest. It bears the risk of loss and poor performance. And it funds the expenses for the provision of the loans.

42.    Shortly after every loan is entered, Opportunity Financial buys 95% of each loan from the rented Utah-chartered bank, such as First Electronic or FinWise. It makes these purchases daily.

43.    Opportunity Financial takes the risk of poorly performing loans. Its accounting statements include provisions for losses on the loans, costs related to its funding of the purchases of the loans, and the costs of loan origination.

44.    By comparison, First Electronic, FinWise, and the other rented bank's risk and reward on these loans is virtually nil. Their fees and expenses are capped under its agreements with Opportunity Financial. And Opportunity Financial's assumption of the risk and purchase of the loans is guaranteed through their agreements with the rented bank (such as First Electronic and FinWise), including a requirement that Opportunity Financial hold cash in blocked accounts at each rented bank.

45.    Opportunity Financial provides the rented banks (such as First Electronic and FinWise) with three more layers of security to guarantee Opportunity Financial's

COMPLAINT FOR CLASS ACTION
(Case No. [_____]) – Page 7

LAW OFFICES OF
MCNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

purchase of the loans: a cash collateral account, an alternate collateral account (both with defined minimum balances), and letters of credit for the benefit of each bank.

46.    Driving home the point that Opportunity Financial is the true lender on these loans is its own financial statements. These statements identify Opportunity Financial's "Key Performance Metrics." The lead metric is "Total Net Originations." That number "includes both originations by bank partners on the OppFi platform, as well as direct originations by OppFi." Other key metrics are the charge-off percentages, auto-approval rates, and marketing costs—all things handled by Opportunity Financial.

**2.    Opportunity Financial is the true lender because it handles all acquisition, all marketing, all underwriting, and all servicing.**

47.    Opportunity Financial handles all acquisition, all marketing, all underwriting, and all servicing of the loans. For this reason as well, Opportunity Financial is the true lender.

48.    Opportunity Financial pays for all the marketing of the loans. To that end, it pays tens of millions of dollars each year on marketing.

49.    Opportunity Financial uses several methods to find potential borrowers. It sends prescreened direct mail. It employs email campaigns directed at borrowers. It uses search engine optimization, online lead generators, social media, and multimedia.

50.    Opportunity Financial also targets consumers through other digital channels, as well as through its website, opploans.com.

51.    Opportunity Financial markets the loans as "OppLoans." This is a trademarked product of Opportunity Financial and the name under which it does business. They are not named "FirstElectronicLoans" or "FinWiseLoans."

52.    Opportunity Financial creates the marketing materials and product offerings to promote the loans. Both the program guidelines used to operate the OppLoans program and the advertising materials that Opportunity Financial uses to promote OppLoans are Opportunity Financial's intellectual property.

COMPLAINT FOR CLASS ACTION
(Case No. [_____]) – Page 8

53.     Opportunity Financial is also the servicer for the loans. It has the exclusive license to use customer information and the right to contact and communicate with borrowers about potential loans.

54.     Consumers who wish to obtain a loan must do so through Opportunity Financial's website, opploans.com. There is no other way to obtain the loans.

55.     Consumers cannot obtain a loan through First Electronic, FinWise, or any other rented bank.

56.     First Electronic's website does not contain any information whatsoever about the loans or obtaining the loans. First Electronic does not reference Opportunity Financial or OppLoans in any way, and nobody visiting First Electronic's website could determine how to take out such a loan.

57.     First Electronic's website references its "strategic partnership program" that "is custom-tailored to an individual partner's products and customer base in order to provide consumer and commercial financing solutions." Thus, First Electronic itself recognizes that these are loans from Opportunity Financial and to Opportunity Financial's customers.

58.     FinWise's website contains a page about loans offered by FinWise. That page markets FinWise's own lending products, none of which are the OppLoans product or anything remotely similar.

59.     That page also contains a notice trumpeting products by FinWise's partners: "If you have received offers from our other Partners, please click the button below. Our Partners include American First Finance, Liberty Lending, Lendingpoint, OppLoans, Mulligan Funding, Behalf and rise." FinWise itself recognizes these are offers *from* OppLoans, not from FinWise.

60.     Clicking that button then leads to a page showing 11 "partners"—i.e., the loans' true lenders. One of these is Opportunity Financial. The FinWise website contains a

LAW OFFICES OF
MCNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

three sentence description of Opportunity Financial's loans, and it directs visitors to Opportunity Financial's website to "Learn More."

61.    Opportunity Financial's duties include finding and identifying eligible borrowers, processing the loan applications, maintaining the originals or copies of all loan documents, performing underwriting on the loan, establishing the account into which the proceeds from the loans are deposited, servicing the loans, collecting on the loans, and instituting collections and legal proceedings against borrowers who have defaulted.

62.    Opportunity Financial executes all notices to consumers about the legal status of the loans and has the authority to grant loan modifications to borrowers.

63.    Opportunity Financial screens potential borrowers based on its own proprietary lending criteria. Nearly all the lending decisions for the loans are made by Opportunity Financial and its proprietary credit-decision-making algorithms. In total, the application and approval process takes around five minutes and is handled solely by Opportunity Financial.

64.    After a loan is approved, Opportunity Financial closely monitors the borrowers' bank account balances. They are looking for cash. If they see a relatively large balance, Opportunity Financial emails these borrowers and tells them they can get more money in their pocket if they refinance. That email then directs them to Opportunity Financial's website to complete the refinance application, which will ultimately refinance them into a new loan at the same 160% interest rate.

65.    Opportunity Financial sends these unsolicited refinance offers for one purpose: to get Opportunity Financial more money, at the cost of forcing its borrowers into deeper and deeper debt spirals. Once Opportunity Financial has found its marks, it seeks to bleed them dry.

COMPLAINT FOR CLASS ACTION
(Case No. [_____]) – Page 10

LAW OFFICES OF
McNaul Ebel Nawrot & Helgren pllc
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

66.     Opportunity Financial spends millions of dollars each year to support its national provision of the OppLoans product. This money is spent on advertisements, loan origination, collection, and technology costs.

### 3. Opportunity Financial is the true lender because it bears all responsibilities under the loan contracts.

67.     Opportunity Financial bears all responsibilities under the loan contracts with the borrowers. First Electronic, FinWise, and the rented banks bear none. For this reason too, Opportunity Financial is the loans' true lender.

68.     The loans do not provide any address or contact information for First Electronic, FinWise, or any other rented bank. Instead, they provide Opportunity Financial's address, phone number, and email address. And the loans direct that all communications go through Opportunity Financial.

69.     The loans mention Opportunity Financial at least fifteen times. These references include:

- a statement identifying Opportunity Financial and its address and phone number as the address for FinWise;

- "If the amount actually owing on the Maturity Date is more than the amount shown on the above Payment Schedule, then: (i) by contacting our servicer Opportunity Financial, LLC ('OppLoans') at (844) 902-4800 or info@opploans.com ….";

- "If you wish to change your payment method, you may contact us by communicating with Opploans at (844) 902-4800 or info@opploans.com";

- "You understand and acknowledge that you may terminate this authorization by notifying us at (844) 902-4800 or info@opploans.com or by mail to OppLoans, ATTN: Compliance Department, One Prudential Plaza, 130 E Randolph St, Suite 3400, Chicago, IL 60601";

- "You may elect to receive advance notice of the date and amount of each regularly recurring Automated Payment that varies from the scheduled payments if you notify us by communicating with OppLoans at (844) 902-4800, or at One Prudential Plaza, 130 E Randolph St, Suite 3400, Chicago, IL 60601";

COMPLAINT FOR CLASS ACTION
(Case No. [_____]) – Page 11

LAW OFFICES OF
MCNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

- "If you believe we have initiated a payment in a manner not contemplated by this authorization, then please contact OppLoans at (844) 902-4800, or One Prudential Plaza, 130 E Randolph St, Suite 3400, Chicago, IL 60601";

- "You understand and acknowledge that you may terminate our authority to create and submit Remotely Created Checks by notifying us at (844) 902-4800 or info@opploans.com or by mail to OppLoans, ATTN: Compliance Department, One Prudential Plaza, 130 E Randolph St, Suite 3400, Chicago, IL 60601";

- "You may elect to receive advance notice of the date and amount of each regularly recurring Remotely Created Check that varies from the scheduled payments if you notify us by communicating with OppLoans at (844) 902-4800, or at One Prudential Plaza, 130 E Randolph St, Suite 3400, Chicago, IL 60601";

- "If you believe we have presented a Remotely Created Check in a manner not contemplated by this authorization, then please contact OppLoans at (844) 902-4800, or One Prudential Plaza, 130 E Randolph St, Suite 3400, Chicago, IL 60601";

- "For questions, please contact: (844) 902-4800"; and

- "We may assign this Note at any time without your permission. Our transfer may be made by causing a registration of transfer in the record of ownership as described below, without providing you with any other notice .... Ownership of this Note (and rights hereunder, including with respect to principal and interest) shall be registered in a record of ownership maintained by an entity specifically designated for such purposes. You hereby irrevocably appoint Opportunity Financial, LLC as your agent acting solely for the purpose of maintaining such record of ownership."

**C.    Opportunity Financial's loan contracts are forms prepared by Opportunity Financial and forced on the borrowers.**

70.    Opportunity Financial uses identical loan contracts (other than the principal amounts) for all loans to the Class.

71.    The loan contracts are forms prepared by Opportunity Financial and are contracts of adhesion. The terms are forced on the borrowers, and the borrowers have no ability to negotiate them.

72.    The loans, written in size 4.5 font, are practically illegible.

73.    The only persons who sign the loan contracts are the borrowers.

74.    Opportunity Financial does not sign them.

COMPLAINT FOR CLASS ACTION
(Case No. [_____]) – Page 12

LAW OFFICES OF
MCNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

75.     First Electronic does not sign them. FinWise does not sign them.

76.     Nobody signs the loans on behalf of Opportunity Financial. Nobody signs the loans on behalf of First Electronic, FinWise, or any other rented bank.

77.     After the loan contracts are purportedly consummated, the borrowers receive a copy of the loan contract. That contract is signed only by the borrower—nobody else.

### D.     The loans' arbitration clauses are void and unenforceable.

78.     Opportunity Financial's loans each contain an arbitration clause. Within that clause is also a class action waiver and a jury trial waiver.

79.     Any issues related to the "validity, enforceability, coverage, or scope" of the arbitration clause "shall be determined by a court."

80.     Arbitration clauses are invalid if the contract is void under generally applicable state law. 9 U.S.C. § 2; *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339, 343 (2011) ("This saving clause permits agreements to arbitrate to be invalidated by 'generally applicable contract defenses, such as fraud, duress, or unconscionability,' but not by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue.").

81.     The Central District of California has already found this same arbitration clause void and unenforceable under California law. It is also void under Washington law for at least four reasons.

82.     First, the arbitration clause is invalid and unenforceable because it is unconscionable. The arbitration clause is procedurally unconscionable. They are Opportunity Financial's form contracts offered on a take-it-or-leave-it basis to financially desperate borrowers. They are contracts of adhesion, and Opportunity Financial has all of the bargaining power.

COMPLAINT FOR CLASS ACTION
(Case No. [_____]) – Page 13

83.     The arbitration clause is also substantively unconscionable. It effectively requires that the arbitrator apply Utah law in any dispute. Utah law does not place any caps on interest rates. So by requiring that the arbitrator apply Utah law, the arbitration clause purports to invalidate all the borrowers' claims under Washington law and deprive them of any remedy for Opportunity Financial's misconduct. An arbitrator could not apply Washington law to determine whether the contract is unconscionable and could not even limit the application of the choice of law clause to the extent necessary to prevent substantial injustice, as Washington requires. Thus, the clause is overly harsh, unduly oppressive, and so one sided as to shock the conscience.

84.     The arbitration clause requires that the "Arbiter must enforce your agreements with us, as they are written." "Any rules that conflict with" this requirement "don't apply." The arbitration clause also requires that "[t]he Arbiter must apply substantive law," which the loan mandates is Utah law. Thus, the arbitration agreement effectively compels the arbitrator to enter judgment for Opportunity Financial and gives her no choice to do otherwise.

85.     The arbitration clause provides that "No arbitration award under this Agreement will affect any dispute involving any other party. No arbitration award under another party's agreement will affect any arbitration under this Agreement." This is unlawful and void because it violates fundamental principles of res judicata, collateral estoppel, and issue preclusion. It also violates RCW 19.86.130, and effectively prohibits the injunctive relief allowed by the Washington Consumer Protection Act.

86.     Imagine if a borrower obtains an order declaring Opportunity Financial's loans to be unlawful or a violation of RICO. That order becomes final. Fundamental offensive issue preclusion would treat that issue as established against Opportunity Financial in all cases. If other borrowers sued, the only question remaining would be damages because liability is established.

COMPLAINT FOR CLASS ACTION
(Case No. [_____]) – Page 14

LAW OFFICES OF
MᴄNᴀᴜʟ Eʙᴇʟ Nᴀᴡʀᴏᴛ & Hᴇʟɢʀᴇɴ ᴘʟʟᴄ
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

87.    The arbitration clause effectively bars the arbitrator from applying any state or federal law on res judicata, collateral estoppel, or issue preclusion and bars the arbitrator from affording relief that would be required in a court of law.

88.    For all those reasons, the arbitration clause is substantively unconscionable.

89.    Second, the arbitration clause is void as a prospective waiver of Plaintiff's rights under federal law because it purports to prospectively waive her right to bring a RICO claim under Washington law.

90.    With the arbitration clause invalidated, the jury trial and class action waivers are also invalidated and unenforceable.

91.    Third, the arbitration clause violates RCW 31.04.027(k) for the reasons already explained.

92.    Fourth, the arbitration clause bars seeking public injunctions and states that borrowers "waive" their right to seek such an injunction. But the Washington Consumer Protection Act grants all plaintiffs the right to seek an injunction stopping all Opportunity Financial's illegal practices in Washington. RCW 19.86.020; RCW 19.86.090.

**E.    Plaintiff's loans are about 160% APR, with durations of around ten months.**

93.    Ms. Fama has taken out multiple loans from Opportunity Financial.

94.    In May 2021, Ms. Fama obtained a loan from Opportunity Financial for an unlawful interest rate at more than double Washington's statutory maximum. The principal balance was $1,600, and the loan had an APR of 159.56% with an approximately 10 month term. Attached as Exhibit A is a true and correct copy of that loan contract, with certain personal information redacted.

95.    Of this $1,600 principal balance, $1,279.72 of it was provided directly to Opportunity Financial to repay a prior loan of Ms. Fama's.

96.    Ms. Fama has made payments on this loan.

COMPLAINT FOR CLASS ACTION
(Case No. [_____]) – Page 15

LAW OFFICES OF
MCNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

97.     Ms. Fama's loan contracts are pre-printed form contracts. The terms were dictated by Opportunity Financial, and she had no opportunity for negotiation or modification.

98.     At no point has Ms. Fama ever communicated with any person employed by First Electronic or FinWise. All her communications were with Opportunity Financial.

**V.     Class Action Allegations**

99.     Plaintiff brings this lawsuit as a class action under Federal Rule of Civil Procedure 23. The putative class is defined as follows:

> All individuals in the State of Washington who obtained a loan from, through, by way of, or with the assistance of Opportunity Financial on or after May 26, 2019, with an interest rate over 25% per year.

> Excluded from the Class are all employees of Opportunity Financial and any judicial officer assigned to this case.

100.    The Class has one sub-class: the RICO Sub-Class.

101.    The RICO Sub-Class is defined as follows:

> All individuals in the State of Washington who obtained a loan from, through, by way of, or with the assistance of Opportunity Financial on or after May 26, 2019, with an interest rate over 50% per year.

> Excluded from this sub-class are all employees of Opportunity Financial and any judicial officer assigned to this case.

102.    Plaintiff is a member of the Class and the RICO Sub-Class.

103.    Because all of Opportunity Financial's loans are around 160% interest per year, every borrower should be a member of both the Class and the RICO Sub-Class.

104.    *Numerosity*. The size of the Class and the RICO Sub-Class each comprise tens of thousands of persons. The size of both classes grows daily.

105.    *Ascertainability*. The members of the Class and the RICO Sub-Class can be ascertained from Opportunity Financial's business records.

COMPLAINT FOR CLASS ACTION
(Case No. [_____]) – Page 16

LAW OFFICES OF
MᴄNᴀᴜʟ Eʙᴇʟ Nᴀᴡʀᴏᴛ & Hᴇʟɢʀᴇɴ ᴘʟʟᴄ
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

106.    *Common Questions of Fact or Law*. The lawsuit is suitable for class treatment because questions of law and fact have common answers that are the same for the Class and the RICO Sub-Class, and those questions predominate over questions affecting only individual members. These common questions of law and fact include:

- Whether Opportunity Financial is the true lender on the loans;

- Whether the loans are governed by Washington law;

- Whether Opportunity Financial charged an interest rate in excess of what is allowed under Washington law;

- Whether the loans violate Washington law;

- Whether the arbitration clause is void;

- Whether the loans are void; and

- The appropriate remedies for Opportunity Financial's misconduct.

107.    *Typicality and Adequacy*. Plaintiff's claims are typical of the claims of the members of the Class and the RICO Sub-Class. The evidence and the legal theories about Opportunity Financial's alleged wrongful conduct are substantially the same for Plaintiff and all members of the Class and the RICO Sub-Class. Plaintiff will fairly and adequately represent and protect the interests of the Class and the RICO Sub-Class and has no interests adverse to them.

108.    *Superiority*. This action is superior to other available methods for fairly and efficiently adjudicating the issues. Class certification will not present any significant management difficulties. Class certification would also conserve judicial and party resources and avoid the possibility of inconsistent judgments and adjudications, as well as the risk that adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.

LAW OFFICES OF
MCNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

109.     The expense and burden of individual litigation would make it very difficult or impossible for individual Class members to redress the wrongs done to them without a class action.

110.     *Conduct on Grounds that Apply to the Class.* Defendant has acted or refused to act on grounds that apply generally to the Class and the RICO Sub-Class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the Class and the RICO Sub-Class as a whole.

**VI.     Causes of Action**

111.     Plaintiff re-alleges and incorporates by reference all the preceding paragraphs and allegations in each of the following causes of actions.

**FIRST CAUSE OF ACTION**
**for Violation of Washington Consumer Protection Act**
**by Plaintiff on behalf of herself and the Class**

112.     Opportunity Financial committed multiple *per se* violations of the Washington Consumer Protection Act, RCW 19.86.010 *et seq.*

113.     Opportunity Financial has engaged in acts or practices that are unfair or deceptive and that have occurred in trade or commerce. These acts affect the public interest and harmed Plaintiff and the Class. There is a causal link between the unfair or deceptive acts and the injuries suffered.

114.     Opportunity Financial engages in the business of making loans of money for personal, family, household, and other non-business purposes to Plaintiff and the Class. Opportunity Financial engages in this activity in the State of Washington.

115.     Any violation of any provision of the Washington Consumer Loan Act "is an unfair and deceptive act or practice and unfair method of competition in the conduct of trade or commerce in violation of RCW 19.86.020." RCW 31.04.208.

116.     Under the Washington Consumer Loan Act, it is a violation of the law to:

LAW OFFICES OF
MᴄNAUL EBEL NAWROT & HELGREN ᴘʟʟᴄ
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

- "Directly or indirectly employ any scheme, device, or artifice to defraud or mislead any borrower, to defraud or mislead any lender, or to defraud or mislead any person;"

- "Directly or indirectly engage in any unfair or deceptive practice toward any person;"

- "Obtain at the time of closing a release of future damages for usury or other damages or penalties provided by law or a waiver of the provisions of this chapter;" and/or

- "Violate any applicable state or federal law relating to the activities governed by this chapter …."

RCW 31.04.027.

117. Opportunity Financial violated all these provisions of Section 31.04.027.

118. Under the Washington Consumer Loan Act, making any loan of money requires "first obtaining and maintaining a license …." RCW 31.04.035(1). Opportunity Financial does not have such a license and, consequently, has violated this provision.

119. Under the Washington Consumer Loan Act, the maximum interest rate is 25%. RCW 31.04.105(1); *see also* RCW 31.04.015(13) (defining "Licensee" to mean any person who has a lender license or who is required to have a license). Opportunity Financial violated this provision because its loans to Plaintiff and the Class have an interest rate of about 160%.

120. Separate from the Washington Consumer Loan Act, Washington usury law provides that "[e]ntering into or transacting a usurious contract is hereby declared to be an unfair act or practice in the conduct of commerce for the purpose of the application of the consumer protection act found in chapter 19.86 RCW." RCW 19.52.036.

121. A usurious contract is defined as any interest rate exceeding "(a) Twelve percent per annum; or (b) four percentage points above the equivalent coupon issue yield (as published by the Board of Governors of the Federal Reserve System) of the average bill rate for twenty-six week treasury bills as determined at the first bill market auction conducted during the calendar month immediately preceding the later of (i) the

COMPLAINT FOR CLASS ACTION
(Case No. [_____]) – Page 19

LAW OFFICES OF
MCNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

1  establishment of the interest rate by written agreement of the parties to the contract, or (ii)

2  any adjustment in the interest rate in the case of a written agreement permitting an

3  adjustment in the interest rate." RCW 19.52.020(1). Throughout the class period, the

4  average bill rate for twenty-six week treasury bills as determined at the first bill market

5  auction has never exceeded 10%. Therefore, throughout the class period, any loans

6  exceeding 14% interest were usurious under Washington usury law.

7    122.    In addition, the usury statute provides that "Whenever a loan or

8  forbearance is made outside Washington state to a person then residing in this state the

9  usury laws found in chapter 19.52 RCW, as now or hereafter amended, shall be applicable

10  in all courts of this state to the same extent such usury laws would be applicable if the

11  loan or forbearance was made in this state." RCW 19.52.030.

12    123.    The usury statute also contains a declaration of policy which meets the per

13  se public interest requirement of the Consumer Protection Act. The statute states that the

14  provisions of RCW 19.52 *et seq.* "are enacted in order to protect the residents of this state

15  from debts bearing burdensome interest rates; and in order to better effect the policy of

16  this state to use this state's policies and courts to govern the affairs of our residents and

17  the state; and in recognition of the duty to protect our citizens from oppression

18  generally." RCW 19.52.005.

19    124.    By making loans at over 6 times the legal interest rate, Opportunity

20  Financial caused injury to Plaintiff and the Class by charging them interest that they had

21  no obligation to pay under Washington law.

22    125.    Under the Consumer Protection Act, Plaintiff seeks to: (1) enjoin further

23  violations, (2) recover actual damages, (3) recover legal fees and costs, and (4) recover an

24  increased award of damages up to an amount not to exceed three times the actual damages

25  sustained. RCW 19.86.020; RCW 19.86.090.

26

COMPLAINT FOR CLASS ACTION
(Case No. [_____]) – Page 20

LAW OFFICES OF
MᴄNᴀᴜʟ Eʙᴇʟ Nᴀᴡʀᴏᴛ & Hᴇʟɢʀᴇɴ ᴘʟʟᴄ
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

## SECOND CAUSE OF ACTION
### for Declaratory Relief
### by Plaintiff on behalf of herself and the Class

126.    Washington and federal law allow a party to obtain a judicial declaration on rights or duties under a written contract. An actual and present controversy has arisen on the rights and duties of the respective parties under the loan contracts.

127.    Plaintiff and the Class contend that the arbitration clauses (including but not limited to its choice-of-law provisions, restrictions on the arbiter's powers, jury waiver, class waiver, prohibition of res judicata, collateral estoppel, and issue preclusion, and requirement that public injunctive relief claims be stayed) are void and unenforceable, as well as that the loans are void and unenforceable.

128.    By contrast, Opportunity Financial contends that the arbitration clauses are valid and enforceable, as well as that the loans are valid and enforceable.

129.    Accordingly, Plaintiff and the Class seek a judicial declaration that:

- Opportunity Financial is the true lender on the loans;

- the loans are governed by Washington law;

- the arbitration clause is unconscionable, void, and unenforceable;

- the arbitration clause's mandating that the arbiter apply Utah substantive law and compelling the arbiter to enforce the loans is unconscionable, void, and unenforceable.

- the arbitration clause's class waiver is unconscionable, void, and unenforceable;

- the arbitration clause's jury waiver is unconscionable, void, and unenforceable;

- the arbitration clause's prohibition of res judicata, collateral estoppel, and issue preclusion is unconscionable, void, and unenforceable;

- the arbitration clause's waiver of the right to seek a public injunction is unconscionable, void, and unenforceable;

- the arbitration clause's requiring that a case alleging public injunctive relief must be stayed until after an arbitration of a claim

COMPLAINT FOR CLASS ACTION
(Case No. [_____]) – Page 21

seeking individual relief is unconscionable, void, and unenforceable; and

- the loans are unconscionable, void, and unenforceable.

### THIRD CAUSE OF ACTION
**for Violation of 18 U.S.C. § 1962(c) (RICO Association-in-Fact Enterprise) by Plaintiff on behalf of herself and the RICO Sub-Class**

130.    Opportunity Financial violated 18 U.S.C. § 1962(c).

131.    *Association in-fact enterprise.* Opportunity Financial, First Electronic, FinWise, and others presently unknown have been members of and constitute an association-in-fact enterprise within the meaning of RICO, and will be referred to collectively as the "Illegal Loans Enterprise." The Illegal Loans Enterprise engaged in activities that affected interstate commerce.

132.    Each of these entities holds uniquely distinct roles:

- Opportunity Financial: the creator, director, funder, implementer, orchestrator, and operator of the rent-a-bank scheme;

- First Electronic: a bank that agreed to be rented by allowing Opportunity Financial to purportedly close loans in First Electronic's name, while Opportunity Financial maintains all risk of loss and holds the predominant economic interest; and

- FinWise: a bank that agreed to be rented by allowing Opportunity Financial to purportedly close loans in FinWise's name, while Opportunity Financial maintains all risk of loss and holds the predominant economic interest.

133.    The Illegal Loans Enterprise is an association-in-fact enterprise of corporate entities and individuals. It comprises persons associated together for a common purpose.

134.    The Illegal Loans Enterprise has an ongoing organization with an ascertainable structure and functions as a continuing unit with separate roles and responsibilities.

COMPLAINT FOR CLASS ACTION
(Case No. [_____]) – Page 22

LAW OFFICES OF
MᴄNᴀᴜʟ Eʙᴇʟ Nᴀᴡʀᴏᴛ & Hᴇʟɢʀᴇɴ ᴘʟʟᴄ
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

135.    While the members of the Illegal Loans Enterprise participate in the conduct of that enterprise, they each have an existence separate and distinct from the enterprise.

136.    *Operation and control of the Illegal Loans Enterprise*. At all relevant times, Opportunity Financial knowingly conducted the Illegal Loans Enterprise's affairs or knowingly participated, directly or indirectly, in the conduct of the enterprise's affairs.

137.    At all relevant times, Opportunity Financial operated, controlled, or managed the Illegal Loans Enterprise through various actions.

138.    Opportunity Financial directed, operated, and managed the affairs of the Illegal Loans Enterprise.

139.    Opportunity Financial could not accomplish the Illegal Loans Enterprise's affairs on its own. To succeed in states with interest rate caps, Opportunity Financial needed to rent a bank that it could claim as the purported lender on the loans.

140.    Opportunity Financial rented at least three Utah state-chartered banks, primarily FinWise but also others such as First Electronic. Opportunity Financial entered contracts with those banks to effect the rent-a-bank scheme and the Illegal Loans Enterprise. The Illegal Loans Enterprise and rent-a-bank scheme could not proceed without those banks.

141.    *Common purpose of the Illegal Loans Enterprise.* The common purpose of the Illegal Loans Enterprise is to enter loan transactions with the Class at interest rates of over approximately 160% interest per year (and always more than 50% per year).

142.    *Collection of unlawful debt*. It is unlawful for a RICO enterprise to engage in the collection of an "unlawful debt." 18 U.S.C. § 1962(c).

143.    An "unlawful debt" is a debt (A) "which is unenforceable under State or Federal law in whole or in part as to principal or interest because of the laws relating to usury" and (B) "which was incurred in connection with … the business of lending money

LAW OFFICES OF
MCNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

or a thing of value at a rate usurious under State or Federal law, where the usurious rate is at least twice the enforceable rate." 18 U.S.C. § 1961(6).

144.    The loans that Opportunity Financial issued to Plaintiff and the RICO Sub-Class are unlawful debts under RICO.

145.    The loans issued to Plaintiff and the RICO Sub-Class are more than two times the amount permitted by Washington laws relating to usury.

146.    The loans issued to Plaintiff and the RICO Sub-Class were incurred in connection with the business of lending money at a rate usurious under this Washington law, where the usurious rate is at least twice the enforceable rate.

147.    Washington law caps the interest rates on loans at no more than 25%.

148.    Opportunity Financial's loans are unenforceable in part under Washington laws relating to usury. Opportunity Financial is not entitled to recover any interest or any fees. RCW 19.52.030; RCW 31.04.035(2).

149.    A single instance of a collection of an unlawful debt violates RICO. That said, Opportunity Financial engaged in widespread misconduct and issued thousands or tens of thousands of loans to the RICO Sub-Class. All of these loans are unlawful debts under RICO.

150.    *Longevity*. The Illegal Loans Enterprise has a longevity sufficient to permit Opportunity Financial to pursue the Illegal Loans Enterprise's purpose. Opportunity Financial spent years, material amounts of money, and significant time and resources to develop the rent-a-bank scheme. It has been operating that scheme for at least five years.

151.    *Injury*. Plaintiff and the RICO Sub-Class were injured as a direct result of Opportunity Financial's violations of 18 U.S.C. § 1962(c), by the payment of unlawful and usurious interest rates on loans made by Opportunity Financial which would not have been made but for Opportunity Financial's conduct.

COMPLAINT FOR CLASS ACTION
(Case No. [_____]) – Page 24

LAW OFFICES OF
MᶜNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

152.    Opportunity Financial is liable for actual damages, treble damages, and legal fees pursuant to 18 U.S.C. § 1964(c).

### FOURTH CAUSE OF ACTION
**for Violation of 18 U.S.C. § 1962(d) (RICO Conspiracy)**
**by Plaintiff on behalf of herself and the RICO Sub-Class**

153.    Plaintiff re-alleges and incorporates paragraphs 130–152.

154.    Opportunity Financial violated 18 U.S.C. § 1962(d) by conspiring to violate § 1962(c).

155.    Opportunity Financial knowingly agreed to facilitate the Illegal Loans Enterprise, which allowed the enterprise to make and collect unlawful debt at more than twice the lawful rate of interest under Washington usury law.

156.    This knowledge is evidenced in part by Opportunity Financial's spearheading the creation of the rent-a-bank scheme.

157.    Plaintiff and the RICO Sub-Class were injured as a direct result of Opportunity Financial's violations of 18 U.S.C. § 1962(d), by the payment of unlawful and usurious interest rates on loans made by Opportunity Financial which would not have been made but for Opportunity Financial's conduct.

158.    Opportunity Financial is liable for actual damages, treble damages, and legal fees pursuant to 18 U.S.C. § 1964(c).

## VII.    Prayer for Relief

Plaintiff requests the following relief:

A.    An order certifying the Class and Rico Sub-Class;

B.    Judgment against Opportunity Financial;

C.    Compensatory damages in an amount to be proven at trial;

D.    Treble damages pursuant to RICO and the Consumer Protection Act;

E.    Punitive damages, to the extent permitted by law;

LAW OFFICES OF
McNaul Ebel Nawrot & Helgren PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

F.      An order declaring that: (1) Opportunity Financial is the true lender on the loans; (2) the loans are governed by Washington law; (3) the loan contracts are void and unenforceable against Plaintiff and the Class members; (4) the loan contracts' arbitration clause is unconscionable, void, and unenforceable; (5) the loan contracts' class waiver is unconscionable, void, and unenforceable; (6) the loan contracts' jury waiver is unconscionable, void, and unenforceable; (7) the loan contracts' prohibition of res judicata, collateral estoppel, and issue preclusion is unconscionable, void, and unenforceable; (8) the loan contracts are unconscionable, void, and unenforceable; (9) the loan contracts' waiver of the right to seek a public injunction is unconscionable, void, and unenforceable; and (10) the loan contracts' requiring that a case alleging public injunctive relief must be stayed until after an arbitration of a claim seeking individual relief is unconscionable, void, and unenforceable;

G.      Pre- and post-judgment interest, to the extent permitted by law;

H.      An injunction that (1) bars Opportunity Financial from directly or indirectly offering, providing, advertising, or acting as a service provider for any loans over the maximum interest rate; (2) requires Opportunity Financial to give individualized notice to all Class members of their rights under all applicable laws; (3) requires Opportunity Financial to provide individualized notice to each such consumer of the procedures available for enforcing the consumer's rights under applicable Washington laws; (4) voids the loans and bars Opportunity Financial from enforcing them; and (5) establishes an effective monitoring mechanism to ensure Opportunity Financial's continued compliance with the terms of the injunction;

I.      Restitution of all money paid to Opportunity Financial, in an amount to be proven at trial;

J.      Legal fees and costs pursuant to RICO, the Consumer Protection Act, and other applicable law; and

LAW OFFICES OF
MCNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

1    K.    Such other relief that the Court deems just and proper.

2

3    DATED this 25th day of May 2023.

4

5                                    McNAUL EBEL NAWROT & HELGREN PLLC

6                                    By:  s/Gregory J. Hollon
                                           Gregory J. Hollon, WSBA No. 26311

7
                                     By:  s/Michael P. Hatley
8                                          Michael P. Hatley, WSBA No. 57500

9                                    600 University Street, Suite 2700
                                     Seattle, Washington 98101
10                                   Phone:        (206) 467-1816
                                     Fax:          (206) 624-5128
11                                   Email:        ghollon@mcnaul.com
                                                   mhatley@mcnaul.com
12
                                     WARREN TERZIAN LLP
13                                   Dan Terzian, *Pro Hac Vice Admission Pending*
                                     222 N. Pacific Coast Highway, Suite 2000
14                                   Los Angeles, CA 90245
                                     Phone:        (213) 410-2617
15                                   Email:        dan.terzian@warrenterzian.com

16                                   *Attorneys for Plaintiff Katherine Fama*

17

18

19

20

21

22

23

24

25

26

**VIII.    Demand for Jury Trial**

Plaintiff demands a trial by jury for herself and the Class on all claims so triable.

DATED this 25th day of May 2023.

McNAUL EBEL NAWROT & HELGREN PLLC

By: s/Gregory J. Hollon
       Gregory J. Hollon, WSBA No. 26311

By: s/Michael P. Hatley
       Michael P. Hatley, WSBA No. 57500

600 University Street, Suite 2700
Seattle, Washington 98101
Phone:      (206) 467-1816
Fax:        (206) 624-5128
Email:     ghollon@mcnaul.com
          mhatley@mcnaul.com

WARREN TERZIAN LLP
Dan Terzian, *Pro Hac Vice Admission Pending*
222 N. Pacific Coast Highway, Suite 2000
Los Angeles, CA 90245
Phone:      (213) 410-2617
Email:     dan.terzian@warrenterzian.com

*Attorneys for Plaintiff Katherine Fama*

LAW OFFICES OF
McNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816